IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent,<br><br>vs.<br><br>SUN HWANG,<br><br>Defendant-Petitioner. | CR NO. 13-01065 DKW-12<br>CV NO. 15-00072 DKW-BMK<br><br>**ORDER DENYING HWANG's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

**ORDER DENYING HWANG's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Sun Hwang, a South Korean citizen and resident of Hawai'i, pled guilty to, and was sentenced for, aiding and abetting the operation of an illegal gambling business, in violation of 18 U.S.C. § 1955. Dkt. No. 401-6 at 16, 29. Hwang now seeks to vacate her conviction and sentence pursuant to 28 U.S.C. § 2255 on the ground that she received constitutionally ineffective assistance of counsel in connection with her decision to plead guilty. Dkt. No. 400. After careful consideration of Hwang's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion"), the record, and the relevant legal authority, Hwang's § 2255 Motion is hereby DENIED, and a certificate of appealability is GRANTED, for the reasons set forth below.

## BACKGROUND

### I. Indictment & Guilty Plea

Hwang was one of fifteen defendants charged in a multi-count indictment involving the illegal operation of a gambling business. Dkt. No. 1. Relevant to this case, the Government charged Hwang on a single gambling charge under Count 1 of the First Superseding Indictment. Dkt. No. 1 at 2-3. Under Count 1, the Government accused Hwang and her co-defendants of operating a gambling business, in violation of 18 U.S.C. §§ 2 and 1955. Dkt. No. 1 at 3.

Hwang's court-appointed attorney, Lars Isaacson, discussed with Hwang the potential immigration consequences of pleading guilty to a violation of 18 U.S.C. §1955. Dkt. No. 406-1 at 1. Isaacson consulted with Hena Mansori of the Defender's Initiative of the National Immigrant Justice Center. Dkt. No. 406-1 at 1. Mansori informed Isaacson that Hwang would be deportable and ineligible for a discretionary waiver if Hwang pled guilty to the § 1955 charge. Dkt. No. 406-1 at 1. Given these "possible dire immigration consequences," Isaacson believed it would be in his client's best interest to consult with a local immigration attorney familiar with Ninth Circuit precedent as well as with the procedures of the local immigration courts. Dkt. No. 406-1 at 1. Isaacson met Carmen Di Amore-Siah, a former chair of the local chapter of the American Immigration Lawyers Association. Dkt. No. 406-1 at 2. Di Amore-Siah advised although pleading to the

§ 1955 charge would result in Hwang's placement in removal proceedings, Hwang would remain eligible for discretionary relief. No. 406-1 at 2. Both Mansori and Di Amore-Siah advised that a plea to misprision of a felony would be the preferred course. Dkt. No. 406-1 at 1- 2.

Relying on this advice, Isaacson contacted Assistant United States Attorney Thomas Brady several times and asked if the Government would allow Hwang to plead to misprision of a felony. Dkt. No. 406-1 at 3; Dkt. No. 406 at 6. The Government would not. Dkt. No. 406-1 at 3; Dkt. No. 406 at 6. Thereafter, on May 15, 2014, Hwang pled guilty to Count 1 without a plea agreement. Dkt. No. 237. During the plea colloquy, the Court informed Hwang that "if your plea is accepted, there may be immigration consequences to your plea[,] which could include removal from the United States." Dkt. No. 401-6 at 11. Hwang acknowledged her understanding by responding, "Yes." Dkt. No. 401-6 at 11.

On September 3, 2014, the Court sentenced Hwang to three years' probation. Dkt. No. 314. On September 5, 2014, the Court entered judgment. Dkt. No. 324. Following Hwang's sentence, the Department of Homeland Security initiated deportation proceedings. Dkt. No. 401-8 at 3. In the deportation proceedings, the immigration judge ruled that Hwang's gambling conviction constituted an aggravated felony, triggering automatic deportation and rendering Hwang ineligible for discretionary relief from removal. Dkt. No. 401-3 at 2.

## II. Motion to Withdraw Guilty Plea Under 28 U.S.C. § 2255

On March 10, 2015, Hwang filed the instant motion pursuant to 28 U.S.C. §2255, alleging ineffective assistance of counsel under the Sixth Amendment and *Padilla v. Kentucky*, 559 U.S. 356 (2010). Dkt. No. 400 at 4. Hwang alleged that she "pled guilty to the charged gambling offense after being advised by [her] counsel (and the immigration attorney [her] counsel retained) that such a gambling conviction would not render [her] removable and would not cause the government to deport [her]"; that she "would not have pled guilty to the charged gambling offense if [she] had known that it would or could result in [her] deportation"; and that "[t]he government commenced removal proceedings against [her] and an immigration judge has ruled that [she is] removable because of [her] gambling conviction." Dkt. No. 400 at 4.

In support of her motion, Hwang attached her own declaration (Dkt. No. 401-8), a declaration from Isaacson (Dkt. No. 401-4), and a declaration from Di Amore-Siah (Dkt. No. 401-3). In her declaration, Hwang explained that as a non-U.S. citizen, her biggest concern in her case was how the gambling charge would affect her immigration status. Dkt. No. 401-8 at 2. She stated that she asked Isaacson a number of questions about the possible immigration consequences of pleading guilty and that Isaacson told her to get advice about those consequences from Di Amore-Siah. Dkt. No. 401-8 at 3. Di Amore-Siah told Hwang that she

4

would not be deported if she pled guilty. Dkt. No. 401-8 at 3. Isaacson allegedly never told Hwang otherwise. Dkt. No. 401-8 at 3. Based on this advice, Hwang pled guilty to Count 1, understanding that she would not be deported. Dkt. No. 401-8 at 3. Following Hwang's sentence, deportation proceedings were brought against her, and she was "shocked and surprised" when the immigration judge ordered her deported. Dkt. No. 401-8 at 3. Hwang maintained that she "never would have pled guilty if [she] was advised that it would subject [her] to deportation" and that she "plead guilty only after [she] was told by [her] attorneys that it would not lead to deportation." Dkt. No. 401-8 at 4.

In his declaration, Isaacson explained Di Amore-Siah's involvement in Hwang's case as follows:

> 3. With a Korean interpreter (and often [with] Ms. Hwang's son) present, Ms. Hwang and I discussed many times the possible negative effect a criminal conviction could have upon her immigration status. Indeed, I consulted with an out of state immigration service for CJA lawyers that warned of the possibility of removal if my client pled guilty to the § 1955 charge. Pursuant to this concern, I contacted local immigration attorney Carmen [Di Amore]-Siah to request she meet with my client for a consultation as to the collateral immigration consequences of pleading to the § 1955 charge. I did not personally know Ms. [Di Amore]-Siah, but saw through her website she was a member of the American Immigration Lawyers Association and had apparently represented many immigration clients.
>
> 4. In January 2014, Ms. [Di Amore]-Siah agreed to meet with my client, her son and interpreter Esther Cho. It is my understanding that at this meeting, Ms. [Di Amore]-Siah told Ms. Hwang that if

5

> she pled guilty to a violation of 18 U.S.C. § 1955 and received a prison sentence of less than a year, Ms. Hwang would not be subject to removal, or, if she were placed in removal proceedings, would have a valid basis to have the removal proceeding set aside.
>
> 5. Presumably relying on Ms. [Di Amore]-Siah's advice, on May 15, 2014, Ms. Hwang pled guilty to one count in violation of 18 U.S.C. § 1955. On September 3, 2014, Ms. Hwang was sentenced to three years probation. It is my understanding that she was shortly thereafter taken into ICE custody and is currently in removal proceedings.

Dkt. No. 401-4 at 2-3.

In her declaration, Di Amore-Siah admitted informing Hwang that "if she received less than one (1) year of incarceration, she would most likely not be deemed an Aggravated Felon and that she would be eligible for an application for relief if she was placed in removal proceedings[.]" Dkt. No. 401-3 at 2. Di Amore-Siah "did not believe that [Hwang] would be considered an Aggravated Felon with little to no relief available based on the sentence of less than one (1) year." Dkt. No. 401-3 at 2. Because of her misinterpretation of the charge against Hwang and the manner in which she advised her, Di Amore-Siah believed that Hwang's Sixth Amendment rights were violated. Dkt. No. 401-3 at 3.

On April 4, 2015, the Government filed its response to Hwang's motion. Dkt. No. 406. The Government argued that Hwang failed to show that Isaacson's performance was ineffective. The Government attached to its response a supplemental declaration from Isaacson in which he clarified that after many

6

discussions with Hwang about her immigration concerns, he "consulted via e-mail with Hena Mansori of the Defender's Initiative of the National Immigrant Justice Center, a resource for CJA lawyers." Dkt. No. 406-1 at 1. According to Isaacson, Mansori responded that "[his] client would be deportable and ineligible for a discretionary waiver if she pled guilty to the § 1955 charge." Dkt. No. 406-1 at 1. Isaacson then thought it best that Hwang consult with a local immigration attorney familiar with Ninth Circuit precedent, and as such, he suggested that Hwang contact Di Amore-Siah. Dkt. No. 406-1 at 1-2. Isaacson further explained:

> 12. I never gave Ms. Hwang any immigration advice in regard to her case. It is my clear recollection that I advised Ms. Hwang I could not assure her that she would not be deported if she pled guilty. I recall indicating to her just prior to her change in plea words to the effect that "the mainland people believe she would be deported if she pled, the Hawaii attorney believed she would not, and I did not know if either was correct." I indicated to her that if she pled, she was taking a risk that she would be deported. I never told her that she would not be deported if she pled guilty to this offense and I offered to take the case to trial if she wanted to pursue that option.

Dkt. No. 406-1 at 3-4.

## **LEGAL STANDARDS**

### I. **28 U.S.C. § 2255**

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The

7

statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Id.*

In addition, the court shall hold an evidentiary hearing on a petitioner's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted. *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). In other words, "[a] hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Id.*

## II. <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. An ineffective assistance of counsel claim entails a two-pronged analysis, as recognized in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong consists of determining whether counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

8

The second prong consists of determining whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This two-prong test applies to guilty pleas based on the alleged ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

## DISCUSSION

### I. Ineffective Assistance of Counsel Claim

The sole basis for Hwang's § 2255 Motion is an ineffective assistance of counsel claim under *Padilla v. Kentucky*, 559 U.S. 356 (2010) and its progeny. Hwang asserts that she meets both prongs of *Strickland* because her attorneys' performance allegedly fell below the objective standard of reasonableness, and as a result, she was prejudiced by their constitutionally deficient performance. The Government counters that Hwang fails to meet either prong of *Strickland*. Taking into account the advice given to Hwang by both Isaacson and Di Amore-Siah, the Court concludes that Hwang did not receive constitutionally ineffective assistance of counsel under the first prong of *Strickland*. As such, the Court does not reach *Strickland's* second prong. Because the record establishes that Hwang's allegations do not state a claim on which relief could be granted, the Court denies Hwang's § 2255 Motion without a hearing. *See Schaflander*, 743 F.2d at 717.

In *Padilla*, the United States Supreme Court held that criminal defendants receive ineffective assistance of counsel under the Sixth Amendment when their attorneys fail to advise them that pleading guilty to an offense will subject them to deportation. Recognizing that most criminal attorneys are not experts in immigration law, the Court explained that "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369. Where, however, the law is "truly clear" about the deportation consequences of a conviction, a defense attorney has a duty to correctly inform his client of those consequences during plea discussions. *Id.* Under *Padilla*, counsel must refrain from "providing [the defendant] false assurance[s] that [her] conviction would not result in [her] removal from this country." *Padilla*, 559 U.S. at 368.

Here, Hwang was charged with illegal gambling under 18 U.S.C. § 1955. Hwang appears to correctly point out that a conviction under 18 U.S.C. § 1955 is a deportable offense that is not subject to discretionary relief. *See* 8 U.S.C. § 1101(a)(43)(J) (listing a § 1955 gambling conviction for which a sentence of one year imprisonment or more may be imposed as an "aggravated felony"); 18 U.S.C. § 1955 (authorizing up to five years' imprisonment for a violation of § 1955 ); 8 U.S.C. § 1227 (stating that "[a]ny alien who is convicted of an aggravated felony at

10

any time after admission is deportable"); 8 U.S.C. §1228(c) (stating that "[a]n alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States); 8 U.S.C. § 1229b(a)(3) (allowing cancellation of removal only if the permanent resident alien "has not been convicted of any aggravated felony").

The record, however, establishes that Hwang knew of the risk of deportation when she pled and that she was not misled. Isaacson informed Hwang that "[he] could not assure her that she would not [be] deported if she pled guilty." Dkt. No. 406-1 at 3-4. Specifically, Isaacson recalls "indicating to [Hwang] just prior to her change in plea words to the effect that 'the mainland people [a reference to National Immigrant Justice Center attorney Mansori] believe that she would be deported if she pled, the Hawaii attorney [a reference to Di Amore-Siah] believed she would not, and [he] did not know if either was correct.' [Isaacson] indicated to [Hwang] that if she pled, she was taking a risk that she would be deported." Dkt. No. 406-1 at 3-4. The Court also advised Hwang of this risk during the May 15, 2014 plea colloquy. Dkt. No. 401-6 at 11.

There is nothing in Hwang or Di Amore-Siah's declarations that contradicts what Isaacson stated in his supplemental declaration. As such, the record establishes that Hwang received contradictory advice from two different attorneys, and in the face of these contradictions and uncertainty, she nonetheless pled guilty

11

to Count 1.  Even if Di Amore-Siah told Hwang that discretionary relief would remain available to her if she were placed in deportation proceedings, any relief that might be afforded was *discretionary*---in other words, it may or may not have been forthcoming.  Isaacson, moreover, told Hwang that she would be taking a risk because other immigration advice he received indicated that discretionary relief would not be available to her at all.  As a result, he offered to take Hwang's case to trial.  *See* Dkt. No. 406-1 at 3-4.  In short, Hwang took a risk when she pled guilty to Count 1, a risk that she was apprised of and from which she now seeks relief.  Under these circumstances, the Court concludes that Hwang is not entitled to relief under *Strickland* and *Padilla*, given Isaacson's objectively reasonable advice and performance that did not mislead Hwang.

Hwang claims that *Alam v. United States*, 630 F.Supp.2d 647 (W.D.N.C. 2009) is directly on point.  Dkt. No. 400-1 at 9.  Although there are similarities between *Alam* and Hwang's case, Hwang overlooks key distinctions.  Alam, like Hwang, was an alien convicted under 18 U.S.C. § 1955 and sought to have his conviction and sentence vacated pursuant to 28 U.S.C. § 2255 on the basis that he received constitutionally ineffective assistance of counsel.  *Alam*, 630 F.Supp.2d at 647.  Alam's counsel contacted several immigration attorneys to inquire whether a § 1955 conviction would lead to Alam's removal from the United States.  *Id.* at 649, 649 n.5.  Unlike the instant case, all of the immigration attorneys that were

consulted advised Alam's counsel that a violation of § 1955 is not an "aggravated felony," and thus, Alam would not be removed. *Id.* That unanimous opinion was communicated to Alam prior to his plea. *Id.* On receiving this advice, Alam accepted the plea agreement, only later to find out that a § 1955 conviction was, in fact, an "aggravated felony" that would trigger his immediate removal upon conviction. *Id.* at 649. The District Court concluded that "Counsel's advice regarding the immigration consequences of [Alam's] plea was undeniably grossly inaccurate, given that the governing statute—§ 1101(a)(43)(J)—explicitly enumerates a § 1955 conviction as an 'aggravated felony' requiring removal." *Id.* at 652. As such, the District Court concluded that "Counsel grossly misinformed [Alam] on the subject." *Id.*

Even were *Alam* binding, the instant case is distinguishable in key respects. Isaacson did not grossly misinform Hwang regarding the consequences of a guilty plea. Rather, he informed Hwang prior to her plea that there were differences of opinion regarding the immigration consequences of a guilty plea to Count 1. As such, Di Amore-Siah's opinion was not the unanimous opinion that existed in *Alam*. To the contrary, Hwang was informed that the National Immigrant Justice Center believed that Hwang would be deported if she pled to Count 1, and suggested misprision as a possible alternative to avoid deportation.

13

In sum, Hwang has failed to meet the first prong of *Strickland*. Because both prongs of *Strickland* must be satisfied in order for Hwang to prevail, the Court does not reach *Strickland's* second prong—whether there is a reasonable probability that the result would have been different. *Strickland*, 466 U.S. at 695 (recognizing that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one"). The Court further concludes that an evidentiary hearing is not required, because Hwang's allegations, when viewed against the files and record, do not state a claim for relief. *See* 28 U.S.C. § 2255(b). The record demonstrates Hwang's receipt of conflicting advice, not misleading advice.

## II. **Certificate of Appealability**

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. MacDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted). Because the facts giving rise to Hwang's § 2255 Motion involve receiving conflicting advice from different attorneys, one of whom (Di Amore-Siah) readily admitted that she provided ineffective assistance of counsel, the

Court concludes that Hwang's ineffective assistance of counsel claim presents issues "adequate to deserve encouragement to proceed further." *Id.*

## **CONCLUSION**

The Court hereby DENIES Hwang's § 2255 Motion and GRANTS a Certificate of Appealability under 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

DATED: June 18, 2015 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

United States v. Hwang; CR 13-1065 DKW-12; CV 15-00072 DKW/BMK
ORDER DENYING HWANG'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE